BRITISH & FOREIGN MARINE INS. CO. v. SOUTHERN PAC. CO.[1]

(District Court, S. D. New York. March 31, 1893.)

CARRIERS—FREIGHT—PRO RATA—DAMAGED GOODS—GOODS DESTROYED.

While a quantity of cotton was in course of transportation from southern ports to Liverpool, by various connecting carriers, but under through bills of lading, certain bales were destroyed and others damaged by a fire on the pier of the respondent,—one of the carriers. The damaged bales were sold, with the knowledge of the insurer, to whom the owner had abandoned, and the proceeds were turned over to such insurer; respondent retaining its pro rata freight on all the cotton destroyed and damaged. Suit was brought by the insurer to compel payment over of such money retained, on the ground that no freight was earned because the cotton was never delivered at the stipulated place of delivery. *Held*, that the insurer, by standing in the place of the owner, and practically receiving the damaged cotton, acquiescing in its sale, and receiving the proceeds, and because, by the terms of the bill of lading, the respondent's contract of carriage was for the most part completely performed, became thereby liable to pay pro rata freight on the damaged cotton sold and accounted for; but, as there was no delivery of the cotton destroyed by the fire, no freight ever became due on that part, and respondent was not entitled to withhold any freight for that part from the insurer.

In Admiralty. Libel by the British & Foreign Marine Insurance Company against the Southern Pacific Company to recover freight withheld by respondent. Decree for libelant as to part of its demand.

[1]Reported by E. G. Benedict, Esq., of the New York bar.

Butler, Stillman & Hubbard, for libelant.
Benedict & Benedict, for respondent.

BROWN, District Judge. The controversy in this case turns upon the question of the right of the carriers to pro rata freight on 52 bales of cotton, part of which was destroyed and the rest damaged, by a fire on the pier of the Morgan Line in this city, on February 28, 1887. These 52 bales were parts of much larger quantities of cotton, which had been shipped partly from interior points in Texas, on the Houston & Texas Railroad, and partly from Galveston and New Orleans. All the cotton was covered by bills of lading, somewhat different in form, but all providing for the transportation to New York by the Morgan Line of steamers, and thence to Liverpool and to other European ports by steamer from New York. By the bills of lading, none of the different carriers were to be responsible for any damage except such as occurred on its own part of the route. The course of dealing was that each succeeding carrier advanced to the preceding carrier the charges of the latter for its proportion of the transportation; while the freight specified in the bill of lading was at a certain rate per pound, or per 100 pounds, for the transportation as an entirety, and was payable on delivery at the place of final destination.

Most of the cotton covered by the various bills of lading was delivered at the place of destination. But so much as was damaged by the fire and was not in fit condition to be forwarded was sold, and the proceeds thereof was paid to the defendant, the proprietor of the Morgan Line. The libelants were the insurers of the cotton, to whom an abandonment was made of what was damaged by the fire; and the proceedings for the care, reparation and sale of the damaged cotton were made, as the evidence shows, with the concurrence and approbation of the libelants. Out of the proceeds of the cotton sold, the defendants claim to retain a pro rata freight to New York, both upon the cotton damaged and sold, and also upon the cotton that was totally destroyed by the fire; i. e. the amount of freight which the respondent had advanced thereon to preceding carriers, and its own pro rata charges for the transportation to New York. The libelants deny that the respondent has any right to retain any freight charges at all on the cotton destroyed, or sold here, for the reason that no freight was earned thereon, in consequence of the failure to deliver this part of the cotton at the stipulated place of delivery, so that no freight thereon ever became due.

The case is not one of a complete failure to perform the contract. It is the case of a complete performance of a part of what was embraced in the bills of lading, and of a failure to perform the residue through perils for which the carrier was not responsible. The libelant, as insurer, accepting an abandonment, as regards the damaged cotton, stands in the situation of the shipper and owner. The disposition of the damaged cotton was made for the best interest of all concerned, viz.: the carrier, the owner and the insurer, and though the disposition of the cotton was through the hands

of the respondent, this was practically, as it seems to me from the evidence, the joint act of both the parties to this libel; and all the proceeds, save the amount covered by this dispute as to freight, has been turned over to the libelants. The disposition of the damaged cotton was, therefore, equivalent to an arrangement for the acceptance and disposal of it by both for their joint account and benefit.

From the earliest times the rule of the maritime law has been different from that of the common law in respect to payment of pro rata freight; the rule being that where the ship, through accident or major force, has been prevented from completing her voyage, the owner, on receiving his goods, must pay ratable freight. Macl. Shipp. 478; Roccus, 81; Consolato, 151; and see other authorities cited in The Spartan, 25 Fed. Rep. 44, 57. Upon this ground I must allow to the carrier in the present case a pro rata freight upon the damaged cotton, the proceeds of which were received by the libelant as the owners' representative. The present is a stronger case for a pro rata freight from the fact that the bills of lading contemplated in several respects the divisibility of the contract; and because the contract contained in the bills of lading was for the most part completely performed.

The method of dividing the entire freight was a matter of private arrangement between the different carriers, to which neither the owners of the cotton, nor the libelants, as insurers, were parties. If any question is made as to the equity of this division, the libelants are entitled, and will be allowed, to take further proof concerning it.

As respects the cotton destroyed, on which the pro rata freight retained by the defendant amounts to a net balance, as I understand from the evidence, of $614.75 over all average deductions for salvage, etc., I do not see any ground on which the respondents can prevail. No benefit has ever accrued either to the owners or to the insurer from the cotton destroyed. So much of the cotton is gone, and the freight is gone with it. The ground of the allowance of a pro rata freight is the meritorious service on the part of the ship in the delivery of the goods to the owner, (Macl. Shipp. 478,) though not at the place originally contemplated. The meritorious services exist in this case as to the damaged cotton delivered, or, what is the same thing, sold by mutual arrangement, and accounted for. But as to the cotton destroyed, this consideration wholly fails; and the freight being payable by the pound, there is no legal or equitable ground, on the destruction of a part, for holding the residue for the freight on the cotton destroyed. No deduction, therefore, should be made for what was destroyed, and the libelants are entitled to a decree for the amount withheld on that account; and they may give further proof as respects a fair pro rata on the residue, if the division made is not acceptable.